IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| KENNETH PAXTON, as surviving parent of Alex Reed Paxton, deceased; and KATHRYN HARTLEY, as surviving parent of Alex Reed Paxton, deceased, and as Administrator of the Estate of Alex Reed Paxton, <br><br>*Plaintiffs*, <br><br>v. <br><br>GEORGIA POWER COMPANY, <br><br>*Defendant and Third-Party Plaintiff*, <br><br>v. <br><br>GLENN INDUSTRIAL GROUP, LLC, <br><br>*Third-Party Defendant.* | Civil Action No.: 4:22-CV-00081-TES |

**FIRST AMENDED COMPLAINT**

Plaintiffs in the above-styled action file this First Amended Complaint[1] and demand for jury trial, respectfully showing the Court the following:

**PARTIES, JURISDICTION, AND VENUE**

1.

On or about October 27, 2020, Alex Reed Paxton ("Alex Paxton") died while working as a commercial diver on the Oliver Dam in Columbus, Georgia. At the time of his death, Alex

---

[1] Out of an abundance of caution, Plaintiffs note that, in filing this First Amended Complaint, they do not waive their position that this action should be remanded to Georgia state court.

Paxton was not married and did not have any children. Alex Paxton, who was an adult at the time of his death, is survived by his parents, Kenneth Paxton and Kathryn Hartley.

2.

Plaintiff Kenneth Paxton ("Mr. Paxton") resides in the state of Ohio.

3.

Plaintiff Kathryn Hartley ("Ms. Hartley") resides in the state of North Carolina.

4.

Ms. Hartley and Mr. Paxton bring this case as the wrongful death beneficiaries pursuant to O.C.G.A. § 51-4-4.

5.

Ms. Hartley also brings this case as the Administrator of the Estate of Alex Reed Paxton, pursuant to her appointment as said Administrator by the Superior Court of Cabarrus County, North Carolina on January 11, 2021.

6.

Defendant Georgia Power Company ("Georgia Power") is a Georgia for-profit corporation with its principal place of business at 241 Ralph McGill Blvd., Bin 10180, Atlanta, Georgia, 30308. Georgia Power has an agent in Muscogee County, Georgia. Georgia Power may be served with Plaintiff's First Amended Complaint through its counsel of record.

**FACTS**

7.

Alex Paxton was an employee of Glenn Industrial Group, LLC ("Glenn Industrial"), which had contracted with Georgia Power to perform work on Georgia Power's Oliver dam.

8.

While working as a commercial diver for Glenn Industrial on October 27, 2020, Alex Paxton descended into the interior of Oliver Dam.

9.

A photograph of the site where Alex Paxton descended into the dam is below.



10.

Although Paxton did not know it, as he descended into the water within the interior of Oliver Dam, the valve to a penstock pipe in that area[2] of the dam was open.

11.

Because the subject valve was open, water was flowing through the subject pipe.

12.

As Alex Paxton descended underwater, his left arm was violently sucked into the subject pipe. Paxton was unable to free himself and unable to breathe.

---

[2] Upon information and belief, this was the valve to the penstock priming pipe for the Unit Two turbine. Hereinafter, this valve is called the "subject valve" and the pipe as to which it controlled the water flow is called the "subject pipe."

13.

Alex Paxton died from his injuries. Specifically, his cause of death was determined to be mechanical asphyxia due to compression of his left upper extremity.

14.

Several Georgia Power employees were called to the scene. One of the dam operators closed the subject valve. That released Paxton's body from the penstock pipe.

15.

The subject valve, which controlled the flow of water through the penstock pipe, should not have been open when Paxton descended into the dam.

16.

Georgia Power should have closed the subject valve before Paxton descended into the dam.

17.

Georgia Power wrongfully, recklessly, and negligently allowed the subject valve to remain open before Alex Paxton descended into the dam on October 27, 2020.

18.

Georgia Power knew or should have known that the subject valve was open before Alex Paxton descended into the dam.

19.

Georgia Power knew or should have known that Glenn Industrial's employees, including Alex Paxton, would be endangered by the subject valve being open.

20.

Georgia Power failed to follow reasonable and proper lock-out, tag-out ("LOTO") procedures before Paxton descended into the dam.

21.

Georgia Power failed to follow its own internal LOTO procedures.

22.

If Georgia Power had followed reasonable and proper LOTO procedures, the subject valve would not have been open.

23.

If Georgia Power had closed the subject valve before Paxton descended into the dam, Paxton's arm would not have been sucked into the penstock pipe.

24.

If Paxton's harm had not been sucked into the penstock pipe, Paxton would not have died.

25.

Upon information and belief, the device that opened and closed valve was located behind a secured gate through which only Georgia Power had the ability to pass (because the gate was locked or otherwise secured).

26.

Georgia Power never told Paxton or any other Glenn Industrial personnel that the valve was open or otherwise warned them about the danger.

27.

Before Glenn Industrial began work on the Oliver Dam on October 27, 2020, Georgia Power provided Glenn Industrial with a diagram of the Oliver Dam. The diagram that Georgia Power provided at that time did not show the subject pipe or the subject valve.

28.

After Paxton died, Georgia Power provided Glenn Industrial with a second diagram that showed the subject pipe and the subject valve.

29.

Alex Paxton exercised ordinary care and diligence for his own safety at all times relevant to this Complaint and under the circumstances then existing.

30.

Georgia Power owned the Oliver Dam.

31.

Georgia Power operated the Oliver Dam.

32.

Georgia Power occupied the Oliver Dam.

33.

Georgia Power exclusively controlled the Oliver Dam, including the subject valve.

34.

Georgia Power did not relinquish possession of the premises of Lake Oliver Dam. Rather, Georgia Power maintained exclusive control over the premises, including control over the subject valve and all mechanisms that regulated the flow of water through the subject pipe.

35.

Georgia Power had the right to direct, and did in fact direct, the work that was to be done.

36.

Georgia Power failed to properly de-energize, isolate, lock out, or tag out the subject valve and failed to warn Glenn Industrial or Paxton about the resulting danger.

37.

If Georgia Power had not wrongfully, recklessly, and negligently allowed the subject valve to remain open before Alex Paxton descended into the dam, Paxton would not have died.

## LIABILITY

### COUNT ONE: NEGLIGENCE

38.

Plaintiffs reallege and reincorporate herein the allegations contained above as though fully restated.

39.

Georgia Power was negligent.

40.

Under Georgia common law, negligence creates liability.  *See, e.g. Brookview Holdings v. Suarez*, 285 Ga. App. 90, 91 (2007) (applying principles of negligence).

41.

Georgia Power was negligent in allowing the subject valve to remain open.

42.

Georgia Power was negligent in failing to create, implement, and perform reasonable and proper LOTO procedures.

43.

Georgia Power was negligent in failing to warn Glenn Industrial and Paxton about the danger created by the water flowing through the subject pipe.

44.

Georgia Power was negligent in failing to identify the subject pipe (and the hazard that it created) to Glenn Industrial and Paxton before Paxton descended into the dam.

45.

Georgia Power was negligent in failing to provide Glenn Industrial and Paxton with a diagram that showed the subject pipe and subject valve before Paxton descended into the dam.

46.

Georgia Power owed its contractor's employees, including Alex Paxton, a duty under Georgia law not to imperil their lives by its own negligence. *See United States v. Aretz*, 248 Ga. 19, 24 (1981); *Hess v. Textrong Automotive Exteriors, Inc.*, 245 Ga. App. 264, 265 (2000).

47.

Georgia Power failed to exercise that care and caution required of a reasonably prudent electric company and dam operator under the same or similar circumstances.

48.

Georgia Power's negligence was the proximate cause of Paxton's death.

## COUNT TWO: PREMISES LIABILITY

49.

Plaintiffs reallege and reincorporate herein the allegations above as though fully restated.

50.

On October 27, 2020, Paxton was Georgia Power's invitee on Oliver Dam.

51.

Georgia Power owed a nondelegable duty under Georgia law to use ordinary care in keeping the premises of Oliver Dam safe for invitees such as Alex Paxton. *See* O.C.G.A. § 51-3-1.

52.

Georgia Power breached its duty to keep the premises safe.

53.

Georgia Power breached its duty to keep the premises safe by leaving the subject valve open when Paxton descended into the dam.

54.

Paxton did not know about the hazard created by the flow of water through the subject pipe.

55.

Paxton did not have actual or constructive notice of the dangers created by the water flowing through the subject pipe.

56.

Georgia Power's failure to keep the premises safe was the proximate cause of Alex Paxton's injuries and death.

**COUNT THREE: CLAIM PURSUANT TO O.C.G.A. § 51-1-6**

57.

Plaintiffs reallege and reincorporate herein the allegations contained above as though fully restated.

58.

Georgia law recognizes a cause of action where a law has been violated "although no cause of action is given in express terms." O.C.G.A. § 51-1-6. *See also Cardin v. Telfair Acres of Lowndes County, Inc.*, 195 Ga. App. 449, 450 (1990) (applying statute).

59.

As one perspicacious jurist put it, "under Georgia law, OSHA regulations are not seen only as ''standards' of performance, but as evidence of legal duty, violation of which may give a cause of action under OCGA § 51–1–6.'" *Owens v. Perdue Foods LLC*, No. 5:20-CV-00307-TES, 2022 WL 7570788, at *1 (M.D. Ga. Oct. 13, 2022) (quoting *Cardin*, 195 Ga. App. at 733).

60.

Georgia Power violated federal occupational safety ("OSHA") regulations in connection with the death of Alex Paxton, including but not limited to 29 C.F.R. § 1910.269 and the following subsections within that section.

a) (a)(2), which relates to training;

b) (a)(3), which relates to the transfer of information between the "host employer" and "contract employers;"

c) (d)(2), which requires the creation and use of procedures, regular inspections, and a training program;

d) (d)(6), which governs LOTO;

e) (d)(6)(ii), which requires the shutdown of equipment;

f) (d)(6)(iv), which requires affixing LOTO devices;

g) (d)(6)(v), which requires that potentially hazardous energy be made safe;

h) (d)(6)(vi), which requires precautions if the accumulation of energy is possible;

    i) (d)(6)(vii), which requires verification and testing;

    j) (d)(7), which governs the release from LOTO;

    k) (d)(7)(iii), which requires a warning if LOTO devices have been removed;

    l) (d)(8)(i), which specifies the procedures to be followed if the equipment must be energized;

    m) (d)(8)(iii), which requires procedures to ensure the continuity of LOTO in the event of a change of personnel;

    n) (d)(8)(iv), which addresses communications with outside personnel;

    o) (d)(8)(v), which addresses LOTO in the context of centrally located devices; and

    p) (v)(12), which addresses "water gates, valves, intakes" or other locations where "water flow may pose a significant hazard."

61.

Georgia Power's violations of 29 C.F.R. § 1910.269 constituted a breach of the legal duties that it owed to Paxton.

62.

Georgia Power's violations of 29 C.F.R. § 1910.269 constituted a breach of the standards of performance that it owed to Paxton.

63.

Georgia Power's violations of 29 C.F.R. § 1910.269 was the proximate cause of Alex Paxton's injuries and death.

<strong><u>COUNT FOUR: NEGLIGENT TRAINING & SUPERVISION</u></strong>

64.

Plaintiffs reallege and reincorporate herein the allegations above as though fully restated.

65.

Georgia Power had a duty under Georgia law to reasonably and properly train, supervise, and retain (or terminate) its employees. *Munroe v. Univ. Health Servs.*, 277 Ga. 861, 863-64 (2004); *Advanced Disposal Servs. Atlanta, LLC v. Marczak*, 359 Ga. App. 316, 319 (2021).

66.

Georgia Power negligently trained, supervised, and/or retained its employees.

67.

Georgia Power's responsibilities as to training and supervision included, but were not limited to, the obligations established by 29 C.F.R. § 1910.269 (including but not limited to subsections (a)(2) and (d)(2)). *See Owens*, 2022 WL 7570788, at *1 (OSHA standards constitute evidence of performance standards and evidence of a legal duty).

68.

Georgia Power knew or should have known that its employees at the Oliver Dam were not following reasonable and proper LOTO procedures.

69.

Georgia Power negligently failed to take reasonable measures to ensure that its employees followed reasonable and proper LOTO procedures.

70.

Georgia Power's negligent training, supervision, and/or retention was the proximate cause of Alex Paxton's injuries and death.

## COUNT FIVE: VICARIOUS LIABILITY

71.

Plaintiffs reallege and reincorporate herein the allegations above as though fully restated.

72.

Georgia Power is vicariously liable under Georgia law for the negligent or reckless acts and omissions of its employees.

73.

Georgia Power is vicariously liable for the torts and misconduct alleged herein.

**COUNT SIX: ATTORNEY'S FEES AND OTHER LITIGATION EXPENSES**

74.

Plaintiffs reallege and reincorporate herein the allegations above as though fully restated.

75.

Georgia Power is liable for expenses and attorney's fees pursuant to O.C.G.A. § 13-6-11 because Georgia Power has acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense.

**COUNT SEVEN: PUNITIVE DAMAGES**

76.

Plaintiff Kathryn Hartley, as administrator of Alex Paxton's estate, realleges and reincorporates herein the allegations above as though fully restated.

77.

Georgia Power is liable to Alex Paxton's estate for punitive damages under Georgia law because Georgia Power showed that entire want of care that raises the presumption of conscious indifference to consequences.  *See* O.C.G.A. § 51-12-5.1(b).

## CAUSATION

78.

But for Georgia Power's misconduct, Paxton would not have died.

79.

Georgia Power's misconduct proximately caused Paxton's death.

80.

As a proximate result of Georgia Power's negligence, Paxton suffered physical and mental pain and suffering.

81.

As a proximate result of Georgia Power's negligence, Paxton suffered physical and mental pain and suffering.

82.

As a proximate result of Georgia Power's negligence, Paxton experienced fright, shock, and terror.

83.

As a proximate result of Georgia Power's negligence, Paxton lost his life.

## DAMAGES

84.

Plaintiffs Kenneth Paxton and Kathryn Hartley, as the natural parents of Alex Reed Paxton, are entitled to recover the full value of the life of their son and all other damages permissible under Georgia law. O.C.G.A. § 51-4-4; O.C.G.A. § 19-7-1(c)(1). Mr. Paxton and Ms. Hartley seek damages in an amount to be determined by the enlightened conscience of a fair and impartial jury. Mr. Paxton and Ms. Hartley also seek, as set forth in Count Six, attorney fees and other litigation expenses as damages under O.C.G.A. § 13-6-11.

85.

Plaintiff Kathryn Hartley, as Administrator of the Estate of Alex Reed Paxton, is entitled to recover on behalf of the estate for the injuries; pain and suffering; and fright, shock, and terror that Alex Paxton sustained prior to his death. Ms. Hartley seeks damages in an amount to be determined by the enlightened conscience of a fair and impartial jury. Ms. Hartley also seeks, as set forth in Count Six and Count Seven, attorney fees and other litigation expenses as damages under O.C.G.A. § 13-6-11, and punitive damages under Georgia law.

## **CONCLUSION**

86.

Plaintiffs respectfully request:

a) that Plaintiffs have trial by jury against Defendant Georgia Power Company;

b) that judgment be entered in favor of Plaintiffs and against Defendant;

c) that Plaintiffs be awarded damages in amounts to be shown at trial; and

d) such other relief as this Court deems just.

Respectfully submitted this 18th day of January 2023.

BUTLER LAW FIRM

BY:   */s/Thomas Giannotti*
      JAMES E. BUTLER, III
       Georgia Bar No. 116955
      THOMAS A. GIANNOTTI
       Georgia Bar No. 977245

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
tom@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646         **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **FIRST AMENDED COMPLAINT** was served via electronic mail to the following attorneys of record:

T. Joshua R. Archer
Tashwanda Pinchback Dixon
Andrea L. Swartzberg
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Boulevard, N.W., Suite 700
Atlanta, GA 30308
jarcher@balch.com, tpinchback@balch.com, aswartzberg@balch.com

T. Langston Bass, Jr.
BRENNAN HARRIS & ROMINGER LLP
P.O. Box 2784
Savannah, GA 31402
tlb@bhrlegal.com

This 18th day of January 2023.

BUTLER | FIRM

BY: ___/s/ *Thomas Giannotti*___
    JAMES E. BUTLER, III
    Georgia Bar No. 116955
    THOMAS A. GIANNOTTI
    Georgia Bar No. 977245

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
tom@butlerfirm.com
(t) 678 940 1444
(f) 678 306 4646

**ATTORNEYS FOR PLAINTIFFS**